35831.   KING *v.* THE STATE.

Decided September 22, 1955.

*Murphy & Murphy, Claude V. Driver,* for plaintiff in error.
*Robert J. Noland, Solicitor-General,* contra.

TOWNSEND, J. Any remarks to the jury by the trial judge or other officer of the court not relevant to any issue in the cause which would have a tendency to coerce them into reaching their verdict constitutes reversible error. *Campbell* v. *State,* 81 *Ga. App.* 834 (60 S. E. 2d 169). That the statement here complained of was made by the bailiff to the jury and falsely attributed to the judge, and that its falsity was not known until after the verdict, is admitted. In *Shaw* v. *State,* 83 *Ga.* 92, 101 (9 S. E. 768), the jury, while deliberating their verdict, were taken to a prayer meeting where the solicitor-general presided, seated them, and in his sermon made reference to the court and the trial. Headnote 1 of this case states: "Where misconduct of a juror or of the jury is shown, the presumption is that the defendant has been injured, and the onus is upon the State to remove such presumption by proper proof. While reviewing courts are loath to interfere with the decision of the trial judge that the presumption has been removed, such decision is in this State subject to review. The misconduct of the jury and of the officer in charge

of them in this case was of such a character as to require a new trial." At page 99 it is held as follows: "There are other things, however, which if done by an individual member of the jury, or by the whole jury, are so contrary to the public policy of the State in the procurement of fair and impartial trials for the citizens of the State as to require that a verdict rendered by such jury be set aside, whether the defendant has been injured thereby or not; and in our opinion, the case under consideration belongs to this class. The State is jealous of the rights and liberties of its people. When one of its citizens is accused of crime, it throws around him all the safeguards that are possible, in order to procure him a fair and impartial trial. It requires the officer who has charge of that particular jury, to swear, in substance, in open court to take them to the jury-room and there keep them safely, and not to communicate with them himself or suffer anyone else to communicate with them, unless by leave of the court. The law contemplates that when a jury are selected and sworn to try a citizen for felony, they shall be entirely separated from the world, and that no communication whatever shall be had with them, from the beginning of the trial until the verdict is rendered, unless by leave of the court. It contemplates that no outside influence shall be brought to bear on the minds of the jury, and that nothing shall occur outside of the trial which shall disturb their minds in any way; that the minds of the jury shall be entirely occupied with the consideration of the case which they are sworn to try."

In the *Shaw* case the jurors made affidavits, as in this case, that they were not influenced. In that case, at page 101, the Supreme Court stated: "It is true that the jury say in their affidavits that these things did not influence their minds; but how can they tell— how can any man tell what particular facts and circumstances influence his judgment? *Woolfolk* v. *State*, 81 *Ga.* 551; *Smith* v. *Lovejoy*, 62 *Ga.* 373; Thompson on Trials, 962." *Harris* v. *State*, 150 *Ga.* 680 (104 S. E. 902), like this case, came on an extraordinary motion for new trial, and like this, was a felony case. As in this case, the bailiff stated to the jury that "the judge would keep them locked up until they did make a verdict." In that case the court, at page 683, stated: "We cannot be assured that the agreement [verdict of guilty] subsequently made, but unattain-

able before, was not effected by this communication. The communication itself was clearly illegal; it was calculated to influence the jury, or some of them, and therefore the verdict is not free from taint." (quoted from *Gholston* v. *Gholston*, 31 *Ga.* 625, 639).

Code § 110-109, codified from *Fulton County* v. *Phillips*, 91 *Ga.* 65 (2) (16 S. E. 260), provides that "The affidavits of jurors may be taken to sustain but not to impeach their verdict"; and this rule of law is recognized, regardless of the fairness or unfairness thereof. Its effect of course is that jurors who contend they were not influenced by the improper remarks may swear to that effect. If the truth is to the contrary, their lips are sealed. Its further effect is that jurors who are asked the question are called upon either to refuse to answer, which means they were influenced in violation of their oaths, or to swear that they were not influenced. The temptation must be strong for a juror to uphold the integrity of his oath, given on entering the jury box, to "a true verdict give according to the evidence," rather than admit, also under oath and after the trial, that in violation thereof he allowed matters other than the evidence in the case to influence his decision. Of course, if he was influenced by how long he might be in the jury box, he was influenced by a matter other than the evidence in the case. Be that as it may, the authorities herein cited require the reversal of this case, notwithstanding affidavits of the jurors that they were not influenced.

On the other hand, the record here shows that after deliberating 24 hours, 3 of the jurors had consistently voted for acquittal; that, within 30 minutes after the statement herein complained of was made by the bailiff to the jury, these 3 jurors capitulated and voted for a verdict of guilty. Eleven of the jurors, being authorized to do so under Code § 110-109, testified the statement had no influence on them. This included 2 of the jurors who had previously voted for acquittal. The remaining juror first made an affidavit that he was influenced, which affidavit cannot be considered because it is in violation of Code § 110-109. He later made an affidavit for the State, in which he undertook to limit the amount of influence the statement had upon him. This affidavit fails, however, to show total lack of influence. Under any rule the onus is upon the State to remove the presumption of harm.

That burden could only be carried by affidavits of 12 jurors. If there was no affidavit at all, therefore, on the part of the 12th juror, the State would have failed to carry the burden. As herein pointed out, the 12th juror made 2 affidavits, neither of which can be considered because they both show influence and consequently tend to impeach the verdict. The second affidavit by this juror for the use of the State shows that he made the verdict sooner than he would have but for the statement. This shows some influence for bad and thus tends to impeach the verdict and cannot be considered. Since the 12th juror failed to make an affidavit that would uphold the verdict, the State failed to carry the burden of showing that this error in trial procedure had no harmful effect.

However, the well established rule in this State enunciated in *Shaw* v. *State,* supra, and *Harris* v. *State,* supra, applies to this case and requires its reversal regardless of whether or not it is made to appear that the error was prejudicial and harmful, it being conclusively presumed that it was so.

The trial court erred in denying the motion for a new trial.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*