## A03A1889. HARRIS v. THE STATE.
### (587 SE2d 819)

PHIPPS, Judge.

Jimmy Franklin Harris appeals his convictions of aggravated battery and simple battery. In reliance on *Crane v. Kentucky*,[1] Harris argues that exclusion of evidence concerning the victim's history of alcoholism deprived him of his right to present a defense to the charges against him. Finding no abuse of discretion in the trial court's determination that the evidence sought to be admitted by Harris was irrelevant, we affirm.

The state's evidence showed that Harris met Beverly Warren while they were both roomers in a boarding house. A romantic relationship developed. Beginning in the summer of 2000 Harris and Warren began living together, first with his niece and then in a hotel where he did remodeling work. Because Harris verbally abused Warren, physically threatened her, and held her as a virtual prisoner in the hotel room, she left him and moved in with a friend in December 2000.

On February 5, 2001, Harris went to Warren's friend's house and induced Warren to leave with him by saying he had changed and asking her to forgive him. After he had taken her to a motel room in which he was then residing, he again began to verbally abuse her and cut her hand with a box cutter. Because the cut caused profuse bleeding, Harris eventually agreed to call paramedics. He told them that Warren had cut herself while trying to open a can of vegetables and insisted on accompanying her to the hospital, where he reported the same thing to her attending physician. The emergency room physician who treated Warren after the February incident testified that the laceration to her hand required 14 stitches. As a result of the injury, Warren's hand was disfigured.

By July 2001, Harris had regained Warren's affection, and she was living with him at a motel where she worked as a housekeeper. Again, he began to verbally abuse and physically threaten her. Warren testified that on July 7, while she and Harris were in his car, he became angry and began striking her in the face with his fist, causing her nose to bleed. Police were later dispatched to Warren and Harris's motel room. The investigating officer observed injuries to Warren's face and arm, and she identified Harris as her assailant. He was arrested. She was taken by ambulance to the hospital. The physician who treated her testified that repeated blows to her face had caused certain of her facial structures to become swollen beyond recognition and that her nose had been broken.

---

[1] 476 U. S. 683 (106 SC 2142, 90 LE2d 636) (1986).

In his defense, Harris testified that he and Warren had had a "beautiful relationship" and that they had separated only because she wanted to spend more time with her child. He denied having assaulted, battered, or threatened her. According to Harris, Warren sliced her hand with a knife while trying to open a can of beans on February 5, and she sustained her injuries on July 7 when a bottle of beer she was drinking hit her in the head after he applied his brakes to avoid a collision between his automobile and another vehicle. Testimony given by various witnesses authorized the jury to find that at the times in question both Harris and Warren had been drinking.

The defense sought to introduce evidence that Warren is an alcoholic, that her alcoholism had been the major cause of difficulties in her failed marriage, and that she had been asked to leave the boarding house because of her drinking. The defense was attempting to show that Warren's alcohol use tended to cause her romantic relationships to go bad and resulted in her making false complaints of domestic violence in response. Testimony by Warren's former husband would, however, have shown that he did engage in domestic violence toward her, although his actions may have been motivated by frustration over her alcohol abuse and neglect of their children. The trial court ruled that it would admit evidence of Warren's alcohol use during her involvement with Harris as well as evidence of any prior false charges of domestic violence she had made, but that evidence of her prior alcohol use or abuse would not be admitted.

In reliance on *Crane v. Kentucky*,[2] Harris argues that he had a constitutional right to challenge Warren's credibility based on her history of alcoholism. *Crane* was a murder prosecution in a Kentucky state court. Prior to trial, the defendant moved to suppress a confession he had given to police. The trial court determined that the confession was voluntary and denied the motion. At trial, the defendant sought to introduce evidence that the confession was unworthy of belief. The trial court ruled such evidence inadmissible. The Kentucky Supreme Court affirmed, reasoning that the excluded evidence related solely to the issue of voluntariness and that under Kentucky procedure a trial court's voluntariness determination could not be relitigated at trial.

The United States Supreme Court granted certiorari and reversed, holding that the circumstances surrounding the taking of a confession can be highly relevant to the ultimate factual question of the defendant's guilt or innocence as well as to the legal question of the confession's voluntariness. The Court in *Crane* acknowledged its traditional reluctance to impose constitutional restraints on ordinary

---

[2] Id.

evidentiary rulings by state trial courts because, as recognized in *Crane*, the constitution leaves to trial judges wide latitude to exclude evidence on grounds of relevance. Because Crane's entire defense was that there was no physical evidence to link him to the crime and that his confession was not to be believed, the Supreme Court concluded that evidence about the manner in which Crane's confession was obtained was especially relevant to the question of Crane's guilt or innocence.

Because the trial court in this case was authorized to find that the victim's history of alcoholism was not relevant to the question of Harris's guilt or innocence, *Crane* is distinguishable. In criminal cases tried in Georgia courts, the admissibility of evidence concerning such matters as a victim's history of alcoholism

> cannot be admitted unless it has some factual nexus with the conclusion for which it is being offered. Sheer speculation is insufficient. Otherwise, character evidence would be admitted routinely, disguised as relevant to whatever speculative theory the proponent managed to put forth.[3]

In this case, the evidence Harris sought to introduce did not show that Warren had previously made any false claims of domestic violence as a result of her alcohol abuse or that her abuse of alcohol had previously caused any accidental injuries. Therefore, he failed to show any nexus whatsoever between her history of alcoholism and the conclusion that she had falsely accused him of battering her. Consequently, the trial court did not abuse its discretion in excluding the evidence Harris sought to have admitted.[4]

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 23, 2003.

*Virginia W. Tinkler*, for appellant.
*J. Tom Morgan, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.

---

[3] (Footnote omitted.) *Roseberry v. State*, 274 Ga. 301, 303 (2) (553 SE2d 589) (2001).
[4] See *Ford v. State*, 269 Ga. 139, 140 (2) (498 SE2d 58) (1998).